USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 15 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Johnny Tlapanco,

                Plaintiff,

–v–

Jon Elges, et al.,

                Defendants.

15-cv-2852 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

      This action stems from the arrest and detention of Plaintiff Johnny Tlapanco on charges that he used an online messaging service to blackmail a Michigan high school student into sending naked pictures of herself. The charges were dropped after it became clear that Tlapanco was not the individual who had communicated with the victim. Tlapanco brings suit against the police officers and police departments in Michigan and New York that were involved in the investigation and carried out his arrest. He claims that they deprived him of various constitutional and civil rights, in violation of 42 U.S.C. § 1983. Although Tlapanco was arrested in New York, where he resides, the investigation that led to his arrest was conducted in Michigan, he was extradited to Michigan, and the charges were brought—and shortly thereafter dropped—in Michigan. Three Michigan police officers and the Michigan police department that spearheaded the investigation (the "Michigan Defendants") have moved to transfer this action to the Eastern District of Michigan. Several of those defendants have also moved to dismiss for lack of personal jurisdiction. For the reasons that follow, the Court grants the motion and therefore declines to reach the issue of personal jurisdiction.[1]

---

[1] A district court may "transfer venue even if it lacks personal jurisdiction over the defendants." *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001). Accordingly, the Court may resolve the "threshold question" of venue "before addressing jurisdiction." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F.

1

I.  **BACKGROUND**[2]

The investigation that led to Tlapanco's arrest began in March 2014. In early March, a fourteen-year-old female student at Oxford High School in Rochester, Michigan, reported to her school security officer that she was being blackmailed by a stranger using the online instant messenger known as "KIK." Compl. ¶ 23.[3] The stranger, whose display name was "anonymous," claimed that he had hacked into the student's phone, retrieved naked pictures of her that were stored on the phone, and would share those photos with her friends and family if she refused to send additional naked pictures. *Id.* ¶ 24.

The high school contacted the Oakland County, Michigan Sheriff's Department, which assigned the case to Detective Jonathan Elges. *Id.* ¶ 26. Elges proceeded to interview the student and a male friend of hers who had possessed her phone recently and who had received naked photos from the student in the past. *Id.* ¶¶ 27-28. Elges received consent to inspect both of their phones, as well as the student's iPod. *Id.* ¶¶ 28. Carol Liposky, a detective with the Oakland County sheriff's office, later performed a forensic examination on the two cell phones and the iPod, which included messages sent from "anonymous" to the student. *Id.* ¶¶ 14, 36-37.

As part of the initial investigation, Elges sent a request to KIK for the email address and the recent IP addresses belonging to the person with the username "anonymous." *Id.* ¶ 31. As Tlapanco notes, there is a difference between a "username" and a "display name"—the former is the permanent name associated with a KIK account, whereas the latter is a changeable name that is displayed when a person uses KIK. *Id.* ¶¶ 31, 51. It does not appear that Elges appreciated

---

Supp. 2d 445, 455 (S.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Tenet v. Doe*, 544 U.S. 1, 6 n. 4 (2005), *aff'd sub nom.*, *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148 (2d Cir. 2015).

[2] Unless otherwise noted, the facts described here are taken from Tlapanco's second amended complaint and assumed to be true for purposes of this motion. *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 23 n.1 (S.D.N.Y. 2016). In addition to Tlapanco's complaint, the Court also considers the affidavits submitted by the Michigan Defendants in support of the motion. *See Mohsen v. Morgan Stanley & Co. Inc.*, No. 11-CV-6751 (PGG), 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (noting that "a court may consider material outside of the pleadings," including affidavits, "[i]n deciding a motion to transfer").

[3] The Court uses "Compl." to refer to Tlapanco's second amended complaint, which is available as an exhibit to Docket No. 63. Tlapanco has also attempted to file the second amended complaint as a stand-alone document at Docket Nos. 83 and 84.

this difference at the time he sent the request to KIK. *Id.* The information Elges received back from KIK led him to Tlapanco. *Id.* ¶ 32. Tlapanco's Gmail address was linked to the KIK account with the username "anonymous," and the IP addresses from which that account was accessed were linked to Tlapanco's college and residence. *Id.* ¶¶ 32-34.

In May 2014, Elges discovered Tlapanco's cell phone number through a warrant sent to Facebook, and he then obtained Tlapanco's cell phone records. *Id.* ¶ 38. Shortly thereafter, Elges reached out to Gregory Thornton, a detective for the NYPD, to have him execute a search warrant for an address in Brooklyn. *Id.* ¶¶ 19, 39. Elges sent Thornton an affidavit that was sworn before a magistrate judge in Michigan. *Id.* ¶ 39. Thornton also swore and served a warrant for connection data from Kingsborough Community College—Tlapanco's school. *Id.* ¶ 40. Elges and his Michigan-based colleague, Detective Jason Louwaert of the Oakland County sheriff's office,[4] executed a search warrant on Tlapanco's home, seized several electronic devices, and questioned Tlapanco about the case. *Id.* ¶¶ 41-43.

The Oakland County Prosecutor's Office subsequently issued an eight-count felony warrant for Tlapanco, sworn before a Michigan magistrate judge. Elges Aff. ¶¶ 5(ee)-(ff), Dkt. No. 67-2. Tlapanco was arrested by the NYPD on July 9, 2014. Compl. ¶ 47. He spent two weeks in jail at Riker's Island, at which point Elges extradited him to Michigan. *Id.* ¶ 48. Tlapanco was arraigned on the charges by video from the Oakland County jail on July 23, 2014. *Id.* ¶ 49. Several weeks later, Tlapanco's counsel met with Elges and explained the username/display name distinction. *Id.* ¶ 51. Elges spoke with the Oakland County Prosecutor's Office, and the prosecutor informed the Michigan court that he intended to drop all charges. *Id.* ¶ 53. The case was dismissed on August 12, 2014. *Id.*

---

[4] The second amended complaint contains conflicting information as to which police department Louwaert worked for. He is initially described as a "detective for the sheriff's office for the County of Oakland, State of Michigan" Compl. ¶ 15, but is later referred to as "Defendant Louwaert of the New York Police Department," *id.* ¶ 41. The latter characterization appears to be in error, given that the Michigan Defendants have indicated that Louwaert is a member of the Oakland County sheriff's office. Reply Br. 2.

3

Tlapanco brought this suit on April 13, 2015. Dkt. No. 1. He alleges that Defendants recklessly and indifferently deprived him of various constitutional rights, in violation of 42 U.S.C. § 1983. Compl. ¶ 58. He contends that he was arrested and prosecuted without probable cause, and he brings claims for municipal liability against Oakland County and the NYPD. *Id.* ¶¶ 68, 74, 86-89. In his initial complaint, Tlapanco named only Elges, Liposky, Michael Bouchard (the sheriff of Oakland County), and Oakland County as defendants (collectively, the "Michigan Defendants"[5]). Dkt. No. 1 ¶¶ 8-11. The second amended complaint includes Thornton, Louwaert, and the NYPD as defendants (together with the Michigan Defendants, "Defendants"). Compl. ¶¶ 15, 19-21. Two individual defendants—Liposky and Bouchard—and Oakland County have moved to dismiss for lack of personal jurisdiction. Dkt. No. 31. The Michigan Defendants have moved to transfer the case to the Eastern District of Michigan. Dkt. No. 66.

## II. LEGAL STANDARD

A court may exercise its discretion to transfer a civil action to "any other district . . . where [the action] might have been brought" if the transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *see also N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). In evaluating a motion to transfer, a court considers the following non-exhaustive set of factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*N.Y. Marine*, 599 F.3d at 112 (internal quotation marks and citation omitted). A court may also weigh "the forum's familiarity with the governing law and trial efficiency and the interest of justice, based on the totality of the circumstances." *Children's Network, LLC v. PixFusion LLC*,

---

[5] Although Louwaert appears to also reside in Michigan, for simplicity's sake the Court uses "Michigan Defendants" to refer only to the defendants who have moved to transfer.

4

722 F. Supp. 2d 404, 409 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." *Smart Skins LLC v. Microsoft Corp.*, No. 14-CV-10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015). Ultimately, "[t]he movant bears the burden of establishing, by 'clear and convincing evidence,' that a transfer of venue is warranted." *Children's Network*, 722 F. Supp. 2d at 409.

## III. DISCUSSION

The Michigan Defendants seek to transfer this action to the Eastern District of Michigan. As an initial matter, Plaintiffs do not contest that this case "might have been brought" in that district, as required by 28 U.S.C. § 1404(a). Given that "a substantial part of the events or omissions giving rise to the claim occurred" in the Eastern District of Michigan, where Oakland County is located, the Court agrees that venue there would be proper. 28 U.S.C. § 1391(b)(2). The central question, therefore, is whether the transfer factors support the Michigan Defendants' position that a transfer of venue is warranted. After considering each factor in turn, the Court concludes that they do.

### A. The Plaintiff's Choice of Forum

Generally, the "plaintiff's choice of forum should be accorded deference" if the "other factors do not weigh strongly in favor of transfer." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008). That deference is diminished, however, when the chosen forum "is neither the [plaintiff's] home nor the place where the operative facts of the action occurred." *Fisher v. Int'l Student Exch., Inc.*, 38 F. Supp. 3d 276, 286 (E.D.N.Y. 2014). Here, Tlapanco's home forum is the Eastern, not Southern, District of New York. *See* Compl. ¶ 12 (alleging that Tlapanco was "at all relevant times . . . a resident of the City of Brooklyn"). The search that was conducted of Tlapanco's home therefore also took place in the Eastern District. *See id.* ¶¶ 39, 41. Tlapanco's complaint is generally devoid of allegations that link the important events of the case to this district, other than the cursory claim that "the search and seizure, the arrest, and the

5

imprisonment in New York . . . all occurred in the Southern District of New York"—a claim that is undermined by the previously described allegations that the search of Tlapanco's home actually took place in the Eastern District. *See id.* ¶¶ 9, 12, 39, 41. Accordingly, Tlapanco's decision to bring this case in the Southern District is entitled to reduced weight.

### B. The Convenience of Witnesses and Parties

"The convenience of witnesses is typically the most important factor when considering a motion to transfer." *Eres N.V. v. Citgo Asphalt Ref. Co.*, 605 F. Supp. 2d 473, 480 (S.D.N.Y. 2009). In weighing this factor, "the convenience of non-party witnesses is accorded more weight than that of party witnesses." *Mastr Asset Backed Sec. Trust 2007-WMC1, ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortgage LLC*, 880 F. Supp. 2d 418, 422 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). The Court "must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). Applying that standard, this factor tips decidedly in favor of transferring the case to Michigan.

Beginning with the non-party witnesses, Defendants identify many Michigan-based witnesses whose testimony will be important at trial. For starters, the victim, her father, her male friend, and her school's administrators all reside in Michigan. The Michigan Defendants have proffered that these individuals will testify to the contents of the victim's phone, the nature of the victim's complaint to her school, and their interactions with police during the investigation. *See* Defs. Br. 12. In other words, they will shed light on what the police knew early on in the investigation and whether their subsequent steps were reasonable. Given Tlapanco's claim that Defendants were "recklessly indifferent and plainly incompetent" in conducting their investigation, Compl. ¶ 57, it will be important to understand what information was presented to the police and what that information suggested about who could be a suspect. These witnesses— the source of most of that initial information—will be vital to that purpose.

Additionally, as best the Court can tell, every person involved in the decision whether to charge Tlapanco resides in Michigan. Some of those individuals, like Elges, are defendants here, but the Michigan Defendants also identify eight potential non-party witnesses who are either officers of the Oakland County Sheriff's Office or work for the Oakland County Prosecutor's Office. *Id.* at 13. These witnesses may provide insight into the key decisions made during the investigation. Ultimately, in order to prove that he was the victim of a false arrest, Tlapanco will have to show that he was arrested without probable cause. *See Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 397 (E.D.N.Y. 2014) ("existence of probable cause . . . is a complete defense to an action for false arrest" under § 1983 (internal quotation marks and citation omitted)). The testimony of non-party witnesses in Michigan will help a jury determine whether Defendants had sufficient information upon which to charge and arrest Tlapanco.

By contrast, Tlapanco's efforts to identity important non-party witnesses in New York are unavailing. First, he suggests that personnel at his college will testify as to his internet usage, but he provides no explanation as to why this testimony will be important. Opp. Br. 5. Second, Tlapanco claims that most individuals who witnessed "the violations of Mr. Tlapanco's civil rights"—i.e., the search of his home, his interview with police, his arrest, and his detention—are based in New York. *Id.* Several of these individuals—namely Elges, Louwaert, and Thornton—are parties, and at least two of them (Elges and Louwaert) reside in Michigan. But to the extent non-party witnesses from New York would testify to the incidents that Tlapanco recounts in his complaint, there is nothing to suggest that they would do anything more than establish the fact that each of those incidents occurred. In other words, they would confirm that Elges's home was searched, that he was questioned, and that he was arrested and detained. Those facts, however, are not likely to be in dispute. The central question in this case is whether the police had sufficient cause to take each of those investigative steps, not whether they actually did so. The nature of the testimony from these as-yet-unnamed witnesses therefore suggests their contribution would not be particularly material. *See AEC One Stop*, 326 F. Supp. 2d at 529.

7

With respect to the party witnesses, four of the five individual defendants live in Michigan, and the testimony of those Michigan-based defendants will be important at trial. As Tlapanco's complaint makes clear, it was the Oakland County police officers, and Elges in particular, who had primary responsibility for the investigation. *See* Compl. ¶¶ 26-46 (describing the steps in the investigation, nearly all of which were initiated by Elges). In fact, Tlapanco alleges that Thornton—the only New-York-based police officer—"relied *solely* on the information from the Michigan Defendants." Compl. ¶ 67 (emphasis added). On the other hand, Tlapanco resides in New York and would clearly be inconvenienced by needing to travel to Michigan. On the whole though, there are more party witnesses with ties to Michigan.

Neither party offers a persuasive reason why the convenience of the parties is distinct from the convenience of the party witnesses here. Tlapanco claims that any inconvenience to the Michigan Defendants would be mitigated because they could "easily work in conjunction with [their] New York co-defendants." Opp. Br. 6. But the two sets of defendants are represented by different counsel, and travel to this district is inconvenient for the Michigan Defendants irrespective of whether other defendants reside here. Accordingly, the convenience of the parties does not alter the Court's assessment of this factor.

For the foregoing reasons, trial in the Eastern District of Michigan would be more convenient for the majority of witnesses whose testimony would be most valuable in this case.

### C. The Location of Relevant Documents

The location of relevant documents and the ease of access to sources of proof is mostly a neutral factor, in light of "the technological age in which we live, where there is widespread use of, among other things, electronic document production." *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 258 (E.D.N.Y. 2010). But to the extent this factor carries any weight, it supports transferring the case to Michigan. The affidavit submitted by Elges indicates that the vast majority of documents relating to the investigation originated in, or were sent to, Michigan. Elges Aff. ¶¶ 5(n)-(dd) (describing responses to requests for information from KIK, Sprint, Google, Kingsborough Community College, Cablevision, Facebook, and MetroPCS). Tlapanco

asserts that "much" of the evidence gathered by the Oakland County Police Department was sent to New York to be used by the NYPD. Opp. Br. 5. But the portions of the complaint he cites describe only two warrants executed in New York, not a wholesale transfer of the case file. Compl. ¶¶ 39, 40. Moreover, Tlapanco does not address Defendants' argument that the file containing all the photographs and conversations stored on the electronic devices collected in the case is located in Michigan. *See* Defs. Br. 14. It is not surprising that all of these documents should be found in the state where the investigation unfolded.

### D. Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Steck v. Santander Consumer USA Holdings Inc.*, No. 14-CV-6942 (JPO), 2015 WL 3767445, at *6 (S.D.N.Y. June 17, 2015) (internal quotation marks and citation omitted). The "locus of operative facts" is the place where the "acts or omissions for which Defendants could be held liable occurred." *Solar v. Annetts*, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010). Transfer is generally appropriate "[w]here a cause of action arises from claims of alleged wrongdoing in the proposed transferee district." *Sheet Metal Workers' Nat'l Pension Fund v. Gallagher*, 669 F. Supp. 88, 92–93 (S.D.N.Y. 1987). Moreover, "[t]ransfer is not precluded where the operative facts have some connection to the initial forum," so long as "the transferee district has a stronger connection with the operative facts." *Id.* at 93.

Here, the operative facts have a minimal connection to this district. As the Court has already explained, Tlapanco resides, and his residence was searched, outside of this district. Compl. ¶¶ 12, 41. The complaint does not indicate where Tlapanco was arrested, though it does suggest he spent two weeks in jail in this district. *Id.* ¶ 48 ("Plaintiff spent two weeks at Riker's Island jail."). Tlapanco argues in his brief that several steps relating to the investigation, such as his questioning and Elges's presence for his extradition, took place in New York. Opp. Br. 7. He makes no attempt, however, to tie those events to this *district*. Even if he had done so, the overwhelming percentage of "acts or omissions for which Defendants could be held liable" took place in the Eastern District of Michigan." *Solar*, 707 F. Supp. 2d at 442.

9

First, all of the initial investigative steps took place in Michigan, including conversations with the victim and her male friend, the forensic analysis of the victim's cell phone and her friend's cell phone, and the requests that were issued (and responded to) relating to the "anonymous" KIK account. Elges Aff. ¶¶ 5(g)-(z). Second, the investigation of the items seized from Tlapanco's residence was authorized from, and conducted in, Michigan. *Id.* ¶ 5(bb)-(cc). Third, the warrant for Tlapanco's arrest was issued and sworn out in Michigan, and Tlapanco was arraigned in Michigan. *Id.* ¶¶ 5(ee)-(hh). Fourth, and perhaps most significantly, the relevant *omissions* (to the extent they exist) took place in Michigan. Tlapanco alleges that both the search of his home and his eventual arrest were based "*solely* and detrimentally on the false information provided by" Elges and his fellow defendants. Compl. ¶¶ 41, 47 (emphasis added). To the extent that characterization is correct, the inaccurate information was the result of investigative omissions in Michigan. For instance, Tlapanco suggests in his complaint that Elges should have investigated the large amount of data that was sent from the victim's phone to her friend's phone. *Id.* ¶ 30. He also suggests that Elges failed to perform due diligence on the difference between a username and a display name for a KIK user. *Id.* ¶ 31. In Tlapanco's own telling then, the shortcomings of this investigation were centered in Michigan. Given that those shortcomings form the basis of his claims here, the Eastern District of Michigan is the locus of operative facts.

E.  **The Availability of Process to Compel Unwilling Witnesses**

Pursuant to Federal Rule of Civil Procedure 45, the Court generally cannot issue a subpoena that would compel a non-party witness to travel more than 100 miles. *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 354 (E.D.N.Y. 2012). Such a restriction would prevent the Court from subpoenaing the many non-party witnesses who reside in Michigan. But the Michigan Defendants have not provided any affidavits from those witnesses indicating that they would not voluntarily testify. *See Eres N.V*, 605 F. Supp. 2d at 482. Accordingly, this factor does not bear on the transfer analysis. *EasyWeb*, 888 F. Supp. 2d at 354.

10

F.  **The Relative Means of the Parties**

"The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 290 (S.D.N.Y. 2004). But if "proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 32 (E.D.N.Y. 2014) (internal quotation marks and citation omitted). Tlapanco alleges that Defendants have greater financial means to litigate this case in New York than he does to litigate it in Michigan. Opp. Br. 8. That may be true, but where a "plaintiff[] ha[s] not supplied the court with any documentation showing that transfer would be financially burdensome, this factor is neutral." *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 578 (E.D.N.Y. 2014).

G.  **The Forum's Familiarity with Governing Law**

As the parties acknowledge, both this Court and the District Court for the Eastern District of Michigan are familiar with the law governing civil rights claims brought pursuant to 42 U.S.C. § 1983. Defs Br. 16; Opp. Br. 9. This factor is therefore neutral.

I.  **Trial Efficiency and the Interest of Justice**

This factor is also neutral. Most of the arguments pertaining to this factor simply repackage the discussion of previous factors, such as the convenience of witnesses and the locus of operative facts. Tlapanco contends, however, that there has been a "great deal of previous litigation in this Court," which suggests a transfer would be against the interests of justice. Opp. Br. 9. This characterization is inaccurate. The only two motions the Court has considered—the instant motion to transfer and the pending motion to dismiss for lack of personal jurisdiction—relate to the suitability of this forum, not the merits of the dispute between the parties. Discovery is still ongoing, *see* Dkt. No. 75, and this Court has not had to intervene in the case in a manner that would speed the resolution of future issues. Accordingly, the interests of justice would be equally well served by litigating the case here or in Michigan.

\* \* \*

11

The two most important transfer factors—the convenience of the witnesses and the locus of operative facts—strongly support transferring this action to the Eastern District of Michigan. In fact, the only factor weighing against transfer is Tlapanco's decision to bring suit here. But even that factor is less significant in this case, given that Tlapanco has not brought suit in his home forum. Moreover, even when a plaintiff's choice of forum *is* entitled to the usual deference, that deference can be overcome where, as here, the other factors "weigh strongly in favor of transfer." *ESPN*, 581 F. Supp. 2d at 547. The case against Tlapanco originated in Michigan; the investigation was primarily conducted in Michigan; charges were filed in Michigan; Tlapanco was arraigned in Michigan; and any investigative omissions likely took place in Michigan. At bottom, Tlapanco claims he was the victim of an investigation gone awry. But unsurprisingly, the lion's share of the facts and testimony relating to those allegations can be found in the place where the investigation unfolded: Michigan. The Court therefore holds that the Michigan Defendants have established, "by 'clear and convincing evidence,' that a transfer of venue is warranted." *Children's Network*, 722 F. Supp. 2d at 409.

## IV. CONCLUSION

For the reasons stated above, the Michigan Defendants' motion to transfer this case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a) is GRANTED. The Clerk of Court is directed to transfer this case accordingly.

In light of that decision, the Court denies as moot the motion to dismiss for lack of personal jurisdiction and a recently filed request to extend the time for discovery. This resolves Docket Nos. 31, 66, and 85.

SO ORDERED.

Dated: September 15, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge